UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MICHAEL GILLAM                                         CIVIL ACTION

VERSUS                                                 NUMBER: 17-12480

WARDEN ALVIN RICHARDSON,                               SECTION: "R"(5)
OFFICIAL AND INDIVIDUAL
CAPACITY; ET AL.

**REPORT AND RECOMMENDATION**

This 42 U.S.C. §1983 proceeding was filed *in forma pauperis* ("IFP") by *pro se* Plaintiff, Michael Gillam, against Defendants, Warden Alvin Robinson, Sergeants James Still and F. Cali, and Captain N. Orazio, all of the Nelson Coleman Correctional Center ("NCCC") in Killona, Louisiana. (Rec. doc. 1, pp. 1, 3-4).

Plaintiff is an inmate of NCCC following his conviction of an unidentified crime on September 8, 2011. (Rec. doc. 1, p. 3). Plaintiff alleges that upon his transfer to NCCC on August 16, 2017,[1] he submitted a request form asking for access to his "legal mail" in connection with a pending lawsuit he had previously filed in the Western District of Louisiana. (Rec. doc. 1, p. 5). On August 30, 2017, Plaintiff states that he received his personal property after it had been searched and inventoried by Sergeant Still, finding his legal work "… disorderly [and] misplaced and legal documents for … [his] pending case missing or destroyed." (*Id.*). Plaintiff indicates that his legal mail had been searched, and the staples removed therefrom, without him being present "… which contribute[d] to the loss of

---

[1] Plaintiff was previously housed at the Allen Correctional Center in Kinder, Louisiana. *See* docket entry between rec. docs. 80 and 81 in the matter entitled *Gillam v. Wise, et al.*, No. 14-CV-2631-UDJ-KK on the docket of the United States District Court for the Western District of Louisiana.

legal documents, and hampered the filing of … [his] court orders," all of which amount to a violation of his Due Process rights. (*Id.*). Plaintiff goes on to allege that Warden Robinson created an unconstitutional policy or custom by learning of and failing to remedy the alleged violation and that the Warden is grossly negligent in the management and supervision of his staff. (*Id.*). As for the other two named Defendants, Captain Orazio and Sergeant Cali, Plaintiff charges them with playing a "… a significant role in the illegal practice of searching, and losing … [his] legal mail (court documents) without … [him] being presen[t]" and that their responses to a grievance that he lodged within NCCC's Administrative Remedy Procedure demonstrate their awareness of and complicity in the incident of which he complains. (*Id.* at pp. 7-8). In his prayer for relief, Plaintiff seeks declaratory and injunctive relief "… for the messing up of my pending case" as well as an unspecified amount of compensatory and punitive damages. (*Id.* at p. 5).

As noted earlier, Plaintiff has instituted suit herein IFP pursuant to 28 U.S.C. §1915. (Rec. doc. 3). A proceeding brought IFP may be dismissed as frivolous under §1915(e)(2)(B)(i) if the claim alleged therein has no arguable basis of law or fact, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993), or if it fails to state a claim upon which relief can be granted. 28 U.S.C. §1915(e)(2)(B)(ii); *see also* 28 U.S.C. §1915A(b), 42 U.S.C. §1997e(c). Giving the instant complaint a liberal reading, it is the recommendation of the undersigned Magistrate Judge that this matter be dismissed as frivolous and for failing to state a claim upon which relief can be granted.

Plaintiff alleges that upon his transfer and processing into NCCC, his personal property, including legal mail and documents, was searched and inventoried outside of his presence and was thereafter returned to him in a disorderly state, with various documents

being missing or destroyed, thereby hampering his ability to effectively litigate another lawsuit pending in the Western District of Louisiana. In addressing Plaintiff's allegations, the Court recalls the well-established principle that prisoners retain, "at best, a very minimal Fourth Amendment interest in privacy after incarceration." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002). Prison practices that impinge on a prisoner's constitutional rights are valid as long as they are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261 (1987). The "… evaluation of penological objectives is committed to the considered judgment of prison administrators, 'who are actually charged with and trained in the running of the particular institution under examination.'" *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, 107 S.Ct. 2400, 2404 (1987)(quoting *Bell v. Wolfish*, 441 U.S. 520, 562, 99 S.Ct. 1861, 1886 (1979)). As a general matter, "… maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Bell v. Wolfish*, 441 U.S. 520, 546, 99 S.Ct. 1861, 1878 (1979). Prison officials are thus "… accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 547-48, 99 S.Ct. at 1878-79. Correctional officials, not inmates, are the proper authorities to dictate prison policy. *Collins v. Scott*, 961 F.Supp. 1009, 1016 (E.D. Tex. 1997).

Measured by the foregoing standards, the search of Plaintiff's personal property upon his admission to NCCC easily passes constitutional muster. The fact that some of that property, in the form of legal documents and/or mail, may have been lost or destroyed is not actionable under §1983 when an adequate state-law remedy exists. *Hudson v. Palmer*, 468

U.S. 517, 104 S.Ct. 3104 (1984); *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 330, 106 S.Ct. 662, 664 (1986); *see also Murphy v. Collins*, 26 F.3d 541, 543-44 (5th Cir. 1994); *Hines v. Booth*, 841 F.2d 623, 624 (5th Cir. 1988)(mere negligence in transmission or loss of prisoner's legal mail not actionable under §1983). Louisiana law provides such a remedy. *See* LSA-C.C. Art. 2315.

Moreover, although inmates have a First Amendment right to both send and receive mail, *Thornburgh v. Abbott*, 490 U.S. 401, 109 S.Ct. 1874 (1989), that right does not preclude prison officials from examining the mail to ensure that it does not contain contraband. *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993), *cert. denied*, 510 U.S. 1123, 114 S.Ct. 1081 (1994). It is further well-settled that a prisoner does not have a constitutional claim if his legal mal is opened and inspected outside of his presence, even if the inspection is in violation of prison regulations. *Id.* at 825; *Henthorn v. Swinson*, 955 F.2d 351, 353 (5th Cir.), *cert. denied*, 504 U.S. 988, 112 S.Ct. 2974 (1992). *See also Singletary v. Stadler*, 273 F.3d 1108 (5th Cir. 2001)("prisoners do not have a constitutional right to be present when privileged, legal mail is opened and inspected"). This is so because "... a prisoner's freedom from censorship under the First Amendment ... with regard to his incoming mail is not the equivalent of freedom from inspection or perusal." *Brewer*, F.3d at 821 (citing *Wolff v. McDonnell*, 418 U.S. 539, 576, 94 S.Ct. 2963, 2984 (1974)). The fact that Plaintiff's legal documents and mail were searched outside of his presence upon his processing into NCCC does not rise to the level of a constitutional violation. *Clemons v. Monroe*, 423 Fed.Appx. 362, 364 (5th Cir. 2011).

Construing Plaintiff's allegations as presenting a claim of denial of access to the courts claim, he fares no better for the following reasons. A prisoner's right of access to the courts encompasses only a reasonably adequate opportunity to file non-frivolous legal claims

challenging his conviction or the conditions of his confinement. *Johnson v. Rodriguez*, 110 F.3d 299, 310-11 (5th Cir. 1997). In order for a Plaintiff to prevail on such a claim, he must demonstrate a relevant, actual injury stemming from the Defendants' allegedly unconstitutional conduct. *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999)(citing *Lewis v. Casey*, 518 U.S. 343, 351-54, 116 S.Ct. 2174, 2180-81 (1996)). "This requires the inmate to allege that his ability to pursue a 'nonfrivolous,' 'arguable' legal claim was hindered." *Brewster v. Dretke*, 587 F.3d 764, 769 (5th Cir. 2009)(quoting *Christopher v. Harbury*, 536 U.S. 403, 415, 122 S.Ct. 2179, 2187 (2002). "The inmate must describe the underlaying claim well enough to show that its 'arguable nature ... is more than hope.'" (*Id.*)(quoting *Christopher*, 536 U.S. at 416, 122 S.Ct. at 2187).

Plaintiff's allegations fail to satisfy these rigorous standards as he makes no showing, nor can he, that his position as a litigant was in fact prejudiced by the conduct of which he complains herein. *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir. 1993)(citing *Henthron*, 955 F.2d at 354). A review of the record of Plaintiff's lawsuit that remains pending in the Western District (*see* note 1, *supra*), particularly that portion of the record that was generated after his transfer to NCCC, readily reveals that he has not been hampered from filing various motions and other papers in the context of that case. For present purposes, it is sufficient to note that he has not identified a single non-frivolous, arguable legal issue that he was unable to advance in that other pending proceeding as a result of his personal property being inspected upon his admission to NCCC. Without such a showing, Plaintiff has no valid §1983 cause of action. *Whiting v. Kelly*, 255 Fed.Appx. 896, 898-99 (5th Cir. 2007); *Walker*, 4 F.3d at 413. As for Plaintiff's complaint regarding the removal of staples from his legal documents, the Court was able to locate at least one case in which prisoners had

5

fashioned paper clips and staples into darts that they would then use as weapons. *Perry v. Griffin*, No. 08-CV-0208, 2009 WL 1140527 (E.D. Tex. Apr. 27, 2009). Deferring, as the Court must, to the judgment of prison officials in matters of institutional security, *Bell*, 441 U.S. at 547-48, 99 S.Ct. at 1878-79, it is entirely understandable that NCCC personnel would want to at least minimize the number of such items that are available to members of the general prison population. Finally, as Plaintiff essentially admits, Captain Orazio and Sergeant Cali had no involvement in the search and inventory of his personal property upon his processing into NCCC and were limited to responding to a grievance he had lodged about the incident. As prisoners do not have a constitutional right to a grievance procedure at all, Plaintiff has no due-process liberty interest in having his grievance resolved to his satisfaction. *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005).

## **RECOMMENDATION**

For the foregoing reasons, it is recommended that Plaintiff's suit be dismissed with prejudice pursuant to 28 U.S.C. §1915(e)(2)(B)(i) and (ii).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996)(en banc).[2]

---

[2] *Douglass* referenced the previously-applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to 14 days.

New Orleans, Louisiana, this  28th  day of _____November_____, 2017.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE